# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

JENNIFER S. WHITE,

        Plaintiff,

    v.
                           Case No. 2:17-cv-593
                           JUDGE GEORGE C. SMITH
                           Magistrate Judge Vascura

ADENA HEALTH SYSTEM, *et al.*,

        Defendants.


## OPINION AND ORDER

This matter is before the Court upon the Motion to Dismiss of Defendants Southern Ohio Medical Center ("SOMC"), Amy Fraulini, and Tom Greene (Doc. 28); the Motion to Dismiss of Defendant Perfusion Professionals, Inc. ("PPI") (Doc. 30); and the Motion to Dismiss of Defendants Adena Health System ("Adena") and Cathy Hageman (Doc. 33). The motions are fully briefed and ripe for disposition. For the following reasons, the Motions of SOMC, Fraulini, Greene, and PPI are **GRANTED** and the Motion of Adena and Hageman is **GRANTED IN PART** and **DENIED IN PART**.

## I.      BACKGROUND

Plaintiff Jennifer S. White worked for Defendant Adena Health System as a cardiovascular perfusionist from June 2006 through April 6, 2015, when she alleges Adena wrongfully terminated her employment. (Doc. 25, Am. Compl. ¶ 12). Prior to her termination, White made complaints to Adena in January 2015 regarding patient safety issues and harassing remarks by physicians related to White's gender and religion. (*Id.* ¶¶ 13, 15). After White's counsel made it known to

Adena that she considered her termination to have been wrongfully motivated by these complaints, Adena and White entered into a settlement agreement in June 2015 prior to the commencement of any administrative or legal proceedings. (*Id.* ¶¶ 15–16). The settlement agreement identified four specific individuals (Jeff Collins, Dr. Anthony Freeman, Dr. Jack Baker, and Eric Perdue) that Adena was required to instruct "to refrain from making any disparaging statement regarding [White] to any prospective employer of [White] . . . and [Adena] will agree that, if any of those Individuals violate that instruction while employed by [Adena], such action will be deemed a violation of this Paragraph of the Agreement." (Doc. 25-5, Settlement Agreement at 3).

On February 15, 2016, approximately ten months after her employment with Adena ended, White interviewed with Defendant Perfusion Professionals, Inc. ("PPI") regarding a perfusionist position that would be located onsite at Defendant Southern Ohio Medical Center ("SOMC"). (Doc. 25, Am. Compl. ¶ 20). On April 14, 2016, PPI offered White a job with a start date of July 1, 2016, but at the request of PPI and SOMC, White began working shifts prior to her official start date. (*Id.* ¶¶ 21–22). On May 26, 2016, PPI informed White that her application paperwork looked good and that White could sign the official employment contract when White and two PPI representatives met for dinner on June 1, 2016. (*Id.* ¶ 24).

On June 1, 2016, White met for dinner with Rick Phipps, a PPI representative. Phipps told her that SOMC had expressed concern about White working at SOMC "because [White] allegedly filed a lawsuit against Adena." (*Id.* ¶ 26). Phipps requested that White meet with SOMC on June 16, 2016 to discuss the alleged lawsuit. (*Id.* ¶ 27). White alleges upon information and belief that, at some point between May 26 and June 1, 2016, "John Doe, a representative from Defendant Adena, provided information regarding Plaintiff's prior Title VII and patient safety complaints against Defendant Adena to Defendant SOMC and/or Defendant PPI," and that, upon information

and belief, "John Doe is one of the individuals bound by the non-disparagement clause" in White's settlement agreement with Adena. (*Id.* ¶ 25).

On June 13, 2016, Defendant Amy Fraulini, Director of Heart & Vascular Services for SOMC, emailed Defendant Cathy Hageman, Critical Care Quality Specialist and Cardiac Registry Data Manager for Adena, to inquire about White:

> Also…we have gotten an application from a former perfusionist at your facility. Could you[ ] hook me up with someone that may be able to reference her? Her name is Jennifer White. Any information would be appreciated.

(*Id.* ¶ 28). Hageman responded on June 15, 2016:

> As for Jen White, she did work for us but we've been instructed to have anyone asking regarding her to contact our Human Resources Department at 740-779-6562. I'm sure they won't give you much information but she didn't leave here on good terms.

(*Id.* ¶ 29).

On June 20, 2016, PPI terminated White's employment. (*Id.* ¶ 31). Phipps explained that SOMC, specifically Defendant Tom Greene, R.N., Director of Surgical Services, and Fraulini had "absolutely no interest in hiring" Plaintiff upon learning that she had a "lawsuit" against Adena. (*Id.*). White alleges that Phipps "indicated that neither Mr. Greene nor Ms. Fraulini revealed their source, but they divulged that the allegation came from an individual via phone/email, and confirmed by Defendant Adena's 'HR' and/or 'medical staff.'" (*Id.*).

On April 14, 2017, White dual-filed charges of discrimination against each of Adena, PPI, and SOMC with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC") alleging retaliation due to her protected complaints to Adena regarding patient safety issues and Title VII discrimination. (*Id.* ¶¶ 34–36; Docs. 25-1 through 25-3, Discrimination Charges). On April 14, 2017, White received a "Dismissal and Notice of Rights" letter, wherein the EEOC stated that it was closing its file on White's charge against Adena because

it was not timely filed.  (Doc. 25-4).  White received Right to Sue letters dated October 24, 2017 from the EEOC on each of her charges against PPI and SOMC, wherein the EEOC noted that more than 180 days had passed since the charges were filed, and the EEOC was terminating its processing of the charge.  (Docs. 25-6 and 25-7).

Plaintiff commenced this action on July 10, 2017, and now, after amending her Complaint, asserts twelve causes of action: retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* against each of Adena, SOMC, and PPI (Counts 1–3); retaliation in violation of Ohio Revised Code Chapter 4112 against Adena, Hageman, and Doe (Count 4), SOMC, Fraulini, and Greene (Count 5), and PPI (Count 6); breach of non-disparagement clause against Adena, Hageman, and Doe (Count 7); breach of employment contract against PPI (Count 8); promissory estoppel against PPI (Count 9); tortious interference with a business relationship against Adena, Hageman, and Doe (Count 10) and SOMC, Fraulini, and Greene (Count 11); and wrongful discharge in violation of public policy against SOMC and PPI (Count 12).  (Doc. 25, Am. Compl. ¶¶ 40–111.

On June 26, 2018, in response to the Court's order to show cause for her failure to identify and serve John Doe, White indicated that she no longer intended to name any additional defendants and requested that John Doe be dismissed as a defendant.  (Doc. 62).  The Court dismissed John Doe without prejudice on June 27, 2018.  (Doc. 63).

## II.     STANDARD OF REVIEW

Defendants bring their motions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that White has failed to state a claim upon which relief can be granted.

Under the Federal Rules, any pleading that states a claim for relief must contain a "short and plain statement of the claim" showing that the pleader is entitled to such relief.  Fed. R. Civ. P. 8(a)(2).  To meet this standard, a party must allege sufficient facts to state a claim that is

"plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the foregoing standards. In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

At issue in these motions are all twelve of White's causes of action. The Court will address each one in turn.

### A. Retaliation (Counts 1–6)

Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42

U.S.C. § 2000e-3(a). Likewise, Ohio Revised Code Chapter 4112 makes it unlawful for "any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." R.C. § 4112.02(I). Claims for retaliation brought under Chapter 4112 are evaluated using the federal evidentiary standards and analysis used under Title VII, and therefore the Court will consider the federal and state retaliation claims together. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 541 (6th Cir. 2003).

The crux of White's retaliation claims is that adverse actions were taken against her by each of SOMC, Fraulini, Greene, PPI, Adena, and Hageman because she engaged in activity protected by Title VII. White may prove her claims with either direct or circumstantial evidence of retaliation. "Direct evidence is that evidence which, if believed, requires no inferences to conclude that unlawful retaliation was a motivating factor in the employer's action." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543–44 (6th Cir. 2008). Alternatively, White may prove her case with circumstantial evidence by making use of the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of retaliation under *McDonnell Douglas*, a plaintiff must show that: (1) she engaged in an activity protected by Title VII; (2) the defendant knew she engaged in this protected activity; (3) thereafter, the defendant took an action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action. *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004).

However, the Supreme Court has cautioned that a plaintiff need not plead all the elements of the *McDonnell Douglas* prima facie case to survive a motion to dismiss. *Swierkiewicz v. Sorema*

*N. A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement."). Rather, "so long as a complaint provides an adequate factual basis for a Title VII discrimination claim, it satisfies the pleading requirements of Federal Rule of Civil Procedure 8(a)(2)." *Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012). Moreover, *Swierkiewicz* remains good law after the Supreme Court's decisions in *Twombly* and *Iqbal. Keys v. Humana, Inc.,* 684 F.3d 605, 609 (6th Cir. 2012).

### 1.      Retaliation by SOMC, Fraulini, and Greene

The parties do not dispute that White engaged in protected activity when she made complaints of Title VII violations to Adena in January of 2015 and when she reached a pre-litigation settlement of her claims that Adena wrongfully terminated her employment in violation of Title VII in June of 2015. However, SOMC argues that White has not sufficiently alleged that SOMC knew of this protected activity when it refused to have White work on its premises.

Rather, White alleged that Phipps told her that "SOMC expressed concern about Plaintiff working at Defendant SOMC because she allegedly filed a lawsuit against Defendant Adena" and that "SOMC, specifically Defendant Tom Greene, R.N., Director of Surgical Services, and Defendant Amy Fraulini, Director of Heart and Vascular Services, had 'absolutely no interest in hiring' Plaintiff upon learning that she had a 'lawsuit' against Defendant Adena." (Doc. 25, Am. Compl. ¶¶ 26, 31). Neither of these allegations mention the basis for the supposed lawsuit or whether it was based on employment discrimination of any kind.

Employees may sue their employers for myriad reasons, of which employment discrimination is only one. Accordingly, the Sixth Circuit has held that discussion of a lawsuit against one's employer, without discussion of the basis for the lawsuit, is insufficient to constitute protected activity under an employment discrimination statute. *Fox v. Eagle Distrib. Co.*, 510

F.3d 587, 591–92 (6th Cir. 2007).[1]  This is true even if the discussed lawsuit did, in fact, oppose a practice made unlawful by the employment discrimination statute.  *Id.* at 591 ("In order to receive protection under [Title VII], a plaintiff's expression of opposition must concern a violation of [Title VII].")  It follows that a third party's knowledge of a lawsuit against one's employer does not give rise to knowledge of protected activity, unless the basis for the lawsuit is opposing an unlawful practice and the third party also has knowledge of that basis.  Thus, SOMC's (mistaken) belief that White had filed a lawsuit against Adena does not, standing alone, plausibly suggest that SOMC had knowledge of White's protected activity.

White attempts to bolster her complaint with additional allegations that "[u]pon information and belief, between May 26, 2016 and June 1, 2016, John Doe, a representative from Defendant Adena, provided information regarding Plaintiff's prior Title VII and patient safety complaints against Defendant Adena to Defendant SOMC and/or Defendant PPI."  (Doc. 25, Am. Compl. ¶ 25).  White also alleges that "[u]pon information and belief, the Defendant Doe, Defendant Hageman and/or other individuals at Defendant Adena disclosed Plaintiff's complaints regarding patient safety and Title VII to Defendant Greene and Defendant Fraulini."  (*Id.* ¶ 32).  These allegations made upon information and belief are threadbare and unsupported by any other factual allegations.

As to John Doe, White candidly admits that "there [was] no way for Ms. White to know the identity of John Doe" at the time she filed her Amended Complaint and argues that she "should be allowed to conduct discovery to determine the identity of John Doe, as well as any other individual who may have disclosed the fact that Ms. White had a lawsuit against Adena."  (Doc.

---

[1] Although *Fox* involved a claim for retaliation under the Age Discrimination in Employment Act (ADEA), the retaliation provisions of the ADEA and Title VII are analyzed similarly.  *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645 n.4 (6th Cir. 2015).

49, Resp. to Adena's Mot. at 15). However, the Court has since permitted White to engage in discovery as to John Doe's identity and granted several extensions of time for White to identify and serve John Doe. (Docs. 44, 47, 56, 60). Recently, White informed the Court that she no longer intends to name any additional defendants and asked that John Doe be dismissed. (Doc. 62). White's inability to identify any person who provided information to SOMC regarding her Title VII complaints, after the benefit of several months of discovery, underscores that White's allegations regarding John Doe reflect no more than her "belief" that such a person exists. "These 'naked assertions devoid of further factual enhancement' contribute nothing to the sufficiency of the complaint." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678).

As to Hageman, White's allegations fare no better. The factual allegations establish that Hageman told SOMC that White "didn't leave [Adena] on good terms" but otherwise directed SOMC's request for a reference to Adena's human resources department. (Doc. 25, Am. Compl. ¶ 29). There are no factual allegations to suggest that Hageman provided any further information to SOMC. And White's assertion "upon information and belief" that Hageman did so is no more supported than her assertions regarding John Doe.

It is reasonable to infer from White's factual allegations that a representative of Adena provided some information regarding White's dispute with Adena to SOMC. Based on what White was told by Phipps, it is reasonable to infer that the information was distorted at some point, such that either the Adena representative or SOMC or both were under the mistaken impression that White filed a lawsuit against Adena. But there are no factual allegations to raise a plausible inference that SOMC was informed by anyone at Adena that White had made or settled Title VII complaints with Adena, which is the actual protected activity she engaged in. Knowledge that

White initiated a "lawsuit" against Adena is insufficient. *Fox*, 510 F.3d at 591–92. And without knowledge of White's protected activity, SOMC cannot have taken any adverse action against her because of that protected activity. *Klaus v. Hilb, Rogal & Hamilton Co. of Ohio*, 437 F. Supp. 2d 706, 728 (S.D. Ohio 2006). Accordingly, White's retaliation claims against SOMC, Fraulini, and Greene must be dismissed.

### 2. Retaliation by PPI

Just as with SOMC, White has not sufficiently alleged that PPI had knowledge of her protected activity. Allegations that PPI was under the impression that White had a lawsuit against Adena are not sufficient without accompanying allegations that PPI knew the basis of the lawsuit. *Fox*, 510 F.3d at 591–92. And the allegations that PPI was aware of White's protected complaints and settlement are made only on information and belief and are unsupported. For the same reasons as with SOMC, White's retaliation claims against PPI must be dismissed.

### 3. Retaliation by Adena and Hageman

#### a. Title VII Retaliation

In many relevant respects, Title VII and Chapter 4112 are interchangeable. However, one important difference between the statutes is Title VII's administrative exhaustion requirement. A plaintiff may not commence an action under Title VII without first filing a timely charge against the defendant with the EEOC. 42 U.S.C. § 2000e-5(e)(1); *Williams v. CSX Transp. Co.*, 643 F.3d 502, 508 (6th Cir. 2011). And to be timely, a charge must be filed with the EEOC within 300 days[2] of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1).

---

[2] Because White dual-filed her charge against Adena with both the EEOC and the OCRC, she has the benefit of the 300-day time limit. Had she filed charge solely with the EEOC, she would have had to file it within 180 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1).

White filed her charge with the EEOC on April 14, 2017. (Doc. 25-1, Adena EEOC Charge). Accordingly, as recognized by White, the last date of any unlawful employment practice must have occurred on or after June 18, 2016 (300 days prior to filing her charge) for the charge to be timely. (Doc. 49, Resp. to Adena's Mot. at 7). Her charge contains the same allegations she makes in her Amended Complaint—including that "[p]rior to June 1, 2016, representatives from Adena provided information regarding Ms. White's prior Title VII complaints against Adena to PPI and/or SOMC." (*Id.* ¶ 7). She makes no further allegations regarding Adena after June 1, 2016. As a result, the EEOC responded on April 21, 2017 to inform her that the EEOC was closing its file on White's charge against Adena because "[y]our charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge." (Doc. 25-4, Dismissal and Notice of Rights).

White argues that her charge was not untimely because she "stated in her First Amended Complaint that 'HR' and/or 'medical staff' confirmed the statements made by Ms. Hageman and/or John Doe. Those conversations happened after June 18, 2016 and, therefore, Ms. White's claims are timely." (Doc. 49, Resp. to Adena's Mot. at 7). However, there are no allegations in either her EEOC charge or her Amended Complaint that suggest those conversations took place after June 18, 2016. This assertion appears for the first time in White's opposition brief to Adena's Motion to Dismiss. Accordingly, the EEOC correctly determined that White's charge against Adena was untimely. As White failed to administratively exhaust her remedies against Adena, her Title VII retaliation claim against Adena must be dismissed. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

### b. Chapter 4112 Retaliation

Chapter 4112 does not require exhaustion of administrative remedies prior to filing suit; therefore, White's untimely charge against Adena does not bar her Chapter 4112 retaliation claim

against Adena and Hageman. However, Adena and Hageman challenge White's retaliation claim on three other grounds: Hageman's lack of knowledge of White's protected activity; lack of any adverse employment action; and lack of any causal connection between White's protected activity and any adverse action. The Court will consider each argument in turn.

### i. Hageman's lack of knowledge as to White's protected activity

Adena argues that Hageman's email to SOMC indicating that White "didn't leave [Adena] on good terms" could not have been written in retaliation for White's protected activity, because White has not sufficiently alleged that Hageman knew of White's protected activity. White alleges only that Hageman had knowledge of the protected activity "as a result of her position" as Adena's Critical Care Quality Specialist and Cardiac Registry Data Manager. (Doc. 25, Am. Compl. ¶ 18). Adena contends this is a threadbare allegation insufficient to raise a plausible inference that Hageman had the requisite knowledge.

The Court disagrees. White's Amended Complaint establishes that Hageman had at least some knowledge regarding White's departure from Adena—namely, that the parting was not amicable. At the pleading stage, the Court finds that White has raised a plausible inference that Hageman was also aware of White's protected complaints and wrongful termination allegations.

Moreover, Hageman's email is not the only alleged act of retaliation by representatives of Adena. White's Amended Complaint also alleges that SOMC learned from an Adena representative that White had a "lawsuit" against Adena. This person would also necessarily have some information about White's departure and it is plausible to infer that he or she was aware of White's protected harassment and wrongful discharge allegations. White's retaliation claims

against Adena and Hageman therefore do not fail for lack of knowledge of White's protected activity.[3]

### ii. Lack of adverse employment action

Adena argues that Hageman's statement that White "didn't leave [Adena] on good terms" does not constitute an adverse action sufficient to establish a retaliation claim. But the Supreme Court has explained that, in the retaliation context, adverse actions are not limited to an employer's actions that solely affect the terms, conditions, or status of employment, or only those acts that occur at the workplace. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 64 (2006). Instead, an adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Garner v. Cuyahoga Cnty. Juvenile Court,* 554 F.3d 624, 639 (6th Cir. 2009) (citing *Burlington Northern*, 548 U.S. at 68). "In this respect, Title VII's anti-retaliation provision is broader than Title VII's discrimination provision." *Miller v. City of Canton*, 319 F. App'x 411, 420-21 (6th Cir. 2009) (citing *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008)).

In fact, the Sixth Circuit has expressly recognized negative job references to qualify as adverse actions for purposes of retaliation claims under Title VII. *Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013); *Abbott*, 348 F.3d at 543. Contrary to Adena's arguments, these cases do not require that the reference disclose the protected activity before it could be considered to dissuade a reasonable employee from opposing an unlawful practice. And this District has previously held that negative job references need not be false to give rise to liability. *Noble v.*

---

[3] The Court finds the allegations as to the knowledge of Adena's representatives to be plausible while finding implausible White's similar allegations as to SOMC's and PPI's knowledge. The distinction lies in the fact that at least some representatives of Adena must have full knowledge of White's protected activity (e.g., those involved in negotiating the settlement agreement), but as far as White is able to allege, SOMC and PPI were only told of White's (non-existent) "lawsuit." The Court finds it plausible, at least at this early pleading stage, that information was shared among Adena employees in a way that it may not have been shared with outside entities.

*Genco I, Inc.*, No. 2:10-CV-648, 2010 WL 5541046, at *3–4 (S.D. Ohio Dec. 30, 2010) (Marbley, J.).  Ohio courts would also apply these standards to claims for retaliation under Chapter 4112. *Abbott*, 348 F.3d at 541.

Accordingly, Hageman's statement that White left Adena on bad terms qualifies as an adverse action for White's retaliation claim.  Moreover, an Adena representative informed SOMC of White's "lawsuit," which is also a negative job reference that would further qualify as an adverse action.  White has therefore sufficiently alleged this element of her retaliation claims.

### iii.        Lack of causal connection

Finally, Adena and Hageman contend that even if Hageman's "bad terms" email and John Doe's disclosure of a "lawsuit" qualify as adverse employment actions, White has not sufficiently alleged a causal connection between her protected activity under Chapter 4112 and these negative job references.  To establish a causal connection, White must make allegations "from which one could draw an inference that the employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in activity that Title VII protects." *Abbott,* 348 F.3d at 543.  The Supreme Court has confirmed that the causation standard applicable to retaliation claims is but-for causation (as opposed to the "motivating factor" standard used for status-based discrimination claims). *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

White has sufficiently alleged that Adena would not have given negative job references to SOMC in the absence of her protected activity.  In the case of John Doe's disclosure of White's "lawsuit," the negative job reference consisted of disclosing the very protected activity that White engaged in.[4]  By definition, this disclosure would not have occurred in the absence of White's

---

[4] Even though, as discussed above, the disclosure of the "lawsuit" was not sufficient to inform SOMC or PPI of White's protected Title VII complaints, there still would have been no "lawsuit" to disclose in the absence of White's protected activity.

protected allegations and settlement against Adena. Similarly, it is plausible to infer that Hageman's reference to White's not leaving on good terms referred to the fact that White had made sexual and religious harassment allegations against Adena. So, too, it is plausible to infer that Hageman's negative job reference would not have been made in the absence of White's protected activity. Even if Hageman's email referred to issues other than White's Title VII complaints, the Sixth Circuit has held that giving a negative job reference in violation of company policy can weigh in favor of finding a causal connection between the employee's protected activity and the employee's adverse action. *Abbott*, 348 F.3d at 544. Here, Hageman acknowledged that she had been instructed to direct SOMC's inquiry to human resources. (Doc. 25, Am. Compl. ¶ 29). Yet, she nevertheless made a negative comment about White's departure in violation of that instruction. *Id.* Taken together, at this early stage in the proceedings, these allegations sufficiently allege a causal connection between White's protected activity and Adena's negative job references. As a result, dismissal of White's retaliation claims under Chapter 4112 against Adena and Hageman is not warranted.

**B.      Breach of non-disparagement clause against Adena and Hageman (Count 7)**

The Court next turns to White's contract claims. White alleges that Adena and Hageman breached the non-disparagement clause of the settlement agreement between Adena and White. (Doc. 25, Am. Compl. ¶ 83). However, White fails to specify what statements by Hageman (or any other Adena representative) were disparaging. Presumably, White intends that whatever information Hageman and/or John Doe provided to SOMC and/or PPI to serve as the disparaging statement for purposes of this claim. Assuming *arguendo* that this is White's intention, the claim for breach of the non-disparagement clause fails on basic contract law principles.

Before a defendant can be liable for breach of contract, it must be a party to the contract. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract

cannot bind a nonparty."). Hageman is not a party to White's settlement agreement. The agreement itself plainly states that it is entered into between "Adena Medical Group, LLC ('Employer') and Jennifer White ('Employee')" with no other parties listed. (Doc. 25-5, Settlement Agreement at 1). This forecloses her ability to sufficiently allege that Hageman was a party to the agreement, because "when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Creelgroup, Inc. v. NGS Am., Inc.*, 518 F. App'x 343, 346–47 (6th Cir. 2013) (quoting *Williams v. CitiMortgage, Inc.,* 498 Fed. App'x 532, 536 (6th Cir. 2012)). Further, White herself acknowledged when seeking leave to file the settlement agreement in redacted form that "Adena is the only defendant in this litigation that is a party to the Agreement." (Doc. 4, Am. Mot. for Leave to file Document Under Seal and *Ex Parte* at 2). Any claim for breach of the non-disparagement clause against Hageman must therefore be dismissed.

As to Adena, which *is* a party to the settlement agreement, White has not sufficiently alleged that Adena has breached the agreement's terms. The non-disparagement clause requires only that four specific individuals refrain from making disparaging comments about White:

> 9. <u>Non-Disparagement</u>. * * * **[Adena] will instruct Jeff Collins, Dr. Anthony Freeman, Dr. Jack Baker and Eric Perdue ("Individuals") to refrain from making any disparaging statement regarding [White]** to: (a) any prospective employer of [White]; or (b) to any external professional associations (e.g. American College of Cardiology) or licensing board unless actions by [White] requires such disclosure, and [Adena] will agree that, if any of those Individuals violate that instruction while employed by [Adena], such action will be deemed a violation of this Paragraph of the Agreement.

(Doc. 25-5, Settlement Agreement at 3). Accordingly, Adena could only have violated the non-disparagement clause if the information regarding White's Title VII complaints or supposed lawsuit was provided to SOMC and/or PPI by one of these four enumerated individuals.

White has not sufficiently alleged that any of these individuals made any disparaging statement regarding White. Hageman plainly is not covered by the clause. White does allege that "[u]pon information and belief, John Doe is one of the individuals bound by the non-disparagement clause contained in the settlement agreement between Defendant Adena and Plaintiff." (Doc. 25, Am. Compl. ¶ 25). However, as discussed above, White's allegations regarding the identity of John Doe are not supported by anything more than White's "belief," and, after the opportunity for discovery, White is no closer to identifying him or her. As a result, White's claim against Adena for breach of the non-disparagement clause must be dismissed.

**C.    Breach of employment agreement against PPI (Count 8)**

In Ohio, employment relationships are presumed to be at-will unless there are facts or circumstances which indicate that the agreement is for a specific term. *Henkel v. Educ. Research Council of Am.*, 45 Ohio St. 2d 249, 251, 344 N.E.2d 118, 119 (1976). Either party to an employment-at-will agreement may terminate the employment relationship for any reason which is not contrary to law. *Mers v. Dispatch Printing Co.*, 19 Ohio St. 3d 100, 103, 483 N.E.2d 150, 153 (1985). As a result, at-will employees typically have no cause of action for breach of contract against their employer based on their termination. *Bernard v. Rockwell Int'l Corp.*, 869 F.2d 928, 931 (6th Cir. 1989).

Accordingly, for White to maintain a claim for breach of an employment contract based on her termination, she must allege that she and PPI agreed that her employment would be for a specified term—in other words, that the parties agreed that the employment relationship would be of a character other than at-will. Her Amended Complaint contains no such allegations. While she has sufficiently alleged that an employment relationship existed between her and PPI (based on the offer of employment beginning July 1, 2016 and White's beginning to work shifts for PPI and SOMC prior to her official start date), she has not alleged that the parties ever stated or implied

that her employment would be for a specified term or that the relationship would be anything other than at-will. Her claim against PPI for breach of employment agreement must therefore be dismissed.

## D. Promissory estoppel against PPI (Count 9)

The Court now turns to White's tort claims. Although at-will employees ordinarily have no cause of action against their employers for termination, Ohio law does recognize certain exceptions. One exception allows a terminated at-will employee to recover if representations were made by the employer that fall within the doctrine of promissory estoppel. *Mers*, 483 N.E.2d at 154. To prove a claim for promissory estoppel, a plaintiff must show (1) that the defendant made a promise, (2) which it reasonably should have expected to induce action or forbearance by the plaintiff, (3) that there was such action or forbearance, and (4) injustice can be avoided only by enforcement of the promise. *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1041 (6th Cir. 1992).

In the employment termination context, the Ohio Supreme Court has specified that the employer's promise must be one that relates to the employee's job security. "Standing alone, praise with respect to job performance and discussion of future career development will not modify the employment-at-will relationship. A demonstration of detrimental reliance on specific promises of job security can create an exception to the employment-at-will doctrine." *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St. 3d 108, 110, 570 N.E.2d 1095, 1098 (1991) (quoting *Helmick v. Cincinnati Word Processing, Inc.*, 45 Ohio St.3d 131, 543 N.E.2d 1212 (1989), paragraph three of the syllabus.).

White has not identified any promise made by PPI regarding her job security. At most, White points to PPI's "clear and unambiguous offer of employment" to begin on July 1, 2016. (Doc. 46, Resp. to PPI's Mot. at 21; Doc. 25, Am. Compl. ¶ 89). But although this offer refers to her start date, it says nothing about how long White would remain employed by PPI and places no

restrictions on the grounds for which PPI could terminate her employment. Because White has not alleged that PPI made a promise regarding her job security, her promissory estoppel claim must be dismissed.

## E. Wrongful discharge in violation of public policy against PPI and SOMC (Count 12)

Another exception to the employment-at-will doctrine is available to employees when they have been discharged in violation of public policy. To prevail on this claim, an employee must establish four elements:

(1) That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element);

(2) That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element);

(3) The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element); and

(4) The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Collins v. Rizkana,* 73 Ohio St.3d 65, 652 N.E.2d 653, 657–58 (1995); *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 773 N.E.2d 526, 529–30 (2002).

### 1. Wrongful discharge by SOMC

SOMC argues that it cannot be liable for White's discharge because White has not sufficiently alleged that SOMC was her employer. White alleged that PPI made the offer of employment, that she had an employment contract with PPI alone, and that PPI terminated her employment. (*Id.* ¶¶ 21, 31, 85). White also asserts her breach of employment contract claim only against PPI and not against SOMC. (*Id.* ¶ 87). Therefore, White's allegations establish that PPI was her employer.

White argues that SOMC should nevertheless be liable for wrongful discharge as a joint employer with PPI. The Sixth Circuit has extended liability under federal and state anti-

discrimination laws to joint employers where the two entities "share or co-determine those matters governing essential terms and conditions of employment," most pertinently, "the ability to hire, fire, and discipline, affect compensation and benefits, and direct and supervise performance." *Sanford v. Main St. Baptist Church Manor, Inc.*, 449 F. App'x 488, 492 (6th Cir. 2011) (citing *Carrier Corp. v. NLRB*, 768 F.2d 778, 781 (6th Cir.1985) and *Sanford v. Main St. Baptist Church Manor, Inc.*, 327 F. App'x 587, 595 (6th Cir. 2009)).

However, White has not offered any authority extending joint employer liability to the context of wrongful discharge in violation of public policy. She further asks the Court disregard *Hicks v. Bryan Med. Grp., Inc.*, 287 F. Supp. 2d 795, 809 (N.D. Ohio 2003) (holding that Ohio would not recognize joint employer liability for wrongful discharge in violation of public policy) solely because as a Northern District of Ohio decision, it is not binding on this Court. While she is correct that this Court is not bound to follow *Hicks*, that case presented facts similar to those at bar, and the Court finds the Northern District's analysis persuasive.

Finally, even if liability were extended to joint employers, White has not sufficiently alleged that SOMC would fall within the extension. She alleges that the position for which White interviewed with PPI would take place "on-site at Defendant SOMC" (Doc. 25, Am. Compl. ¶ 20); that White "began working shifts prior to her official start date" "[a]t the request of Defendant PPI and Defendant SOMC" (*id.* ¶ 22); that SOMC contacted Adena to obtain an employment reference for White (*id.* ¶ 28); and that PPI terminated White's employment because SOMC had "absolutely no interest in hiring" her (*id.* ¶ 31). But nowhere does White allege that SOMC shared or co-determined those matters governing the essential terms and conditions of her employment, or that SOMC had the power to hire, fire, discipline, affect compensation and benefits, or direct and

supervise her performance. SOMC's lack of interest in working with White does not necessarily imply that SOMC itself had the power to terminate White's employment.

Accordingly, because White has not alleged that SOMC was either her sole or joint employer, her claim for wrongful discharge in violation of public policy must be dismissed.

### 2.    Wrongful discharge by PPI

PPI was unquestionably White's employer, at least for a time while she had begun working shifts on-site at SOMC. However, PPI argues that White has not sufficiently pleaded the clarity element of her wrongful discharge claim. The Ohio Supreme Court has held that a "clear public policy" is not limited to statutes enacted by the General Assembly "but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law." *Painter v. Graley*, 70 Ohio St.3d 377, 639 N.E.2d 51 (1994), paragraph three of the syllabus. White alleges that "there is a clear public policy for employees to consult attorneys about possible claims that would affect the employer's business interests, including the Ohio Constitution, At. I, § 16 [the "Open Courts" provision], the Code of Professional Responsibility, EC 1-1 and 2-1, as adopted by the Ohio Supreme Court, and common law." (Doc. 25, Am. Compl. ¶ 107).

White is correct that Ohio courts have found a clear public policy in favor of allowing employees to consult with counsel, even about matters that would affect their employer's business interests. *E.g.*, *Chapman v. Adia Servs., Inc.*, 116 Ohio App. 3d 534, 542–43, 688 N.E.2d 604, 609 (1st Dist. 1997); *Simonelli v. Anderson Concrete Co.*, 99 Ohio App. 3d 254, 259, 650 N.E.2d 488, 492 (10th Dist. 1994). However, White did much more than consult an attorney about her legal options regarding Adena's termination of her employment. "After hiring an attorney, Plaintiff alleged that Defendant Adena unlawfully terminated her as a result of her complaints about discrimination in violation of [Title VII] and patient safety issues at Defendant Adena."

(Doc. 25, Am. Compl. ¶ 15). These allegations resulted in a settlement agreement between White and Adena. (*Id.* ¶ 16; Doc. 25-5, Settlement Agreement).

Importantly, Ohio courts evaluating public policy distinguish between employees who merely consult an attorney to ascertain their rights and employees who go on to file a lawsuit against their employer. This distinction is necessary to preserve the balance of the employer-employee relationship, lest the employer be placed "in the unenviable position of having to continue in a relationship that has been tainted by the acrimonious nature of litigation." *Taylor v. Volunteers of Am.*, 153 Ohio App. 3d 698, 2003-Ohio-4306, 795 N.E.2d 716 (1st Dist.), ¶ 12. Thus, after consulting an attorney to ascertain his rights, "an employee may freely elect between filing suit and jeopardizing his employment on the one hand, and foregoing litigation and protecting the employment relationship on the other." *Elam v. Carcorp, Inc.*, 10th Dist. Franklin No. 2AP–260, 2013-Ohio-1635, ¶ 16 (quoting *Taylor* at ¶ 11).

White's actions in this case are much closer to having filed a lawsuit than having merely consulted with counsel. Although she did not reach the stage of filing a complaint against Adena in connection with her termination, she made allegations of legal wrongdoing against Adena that resulted in a settlement. It seems unlikely that Ohio courts would decline to extend *Taylor*'s allowance for employers to discharge employees who file lawsuits to situations where the employee makes a threat of litigation sufficiently credible to induce the employer to settle. Asserting claims against one's employer, short of filing a lawsuit, is still likely to create the same untenable employment relationship that concerned the *Taylor* court. Moreover, White's allegations establish that both SOMC and PPI were under the impression that White had actually filed a lawsuit against Adena, and the "lawsuit" was the reason she was given for her discharge. (Doc. 25, Am. Compl. ¶¶ 26, 31).

One key difference between White's actions and most of the cases in this context is that White's allegations of Adena's wrongful discharge were made after her employment with Adena had already ended, and she argues that she was wrongfully terminated by PPI (not Adena) because of those allegations. Most relevant Ohio cases involve employees who were terminated because they filed suit against their present employer, not employees who were terminated and later filed suit. One case that does address White's scenario is *Elam v. Carcorp*. In that case, Elam's employment was terminated by Bob McDorman Chevrolet, Inc. ("McDorman"). 2013-Ohio-1635 at ¶ 2. Elam subsequently began working for Carcorp. *Id.* While employed by Carcorp, Elam filed suit against McDorman for wrongful termination of his employment. *Id.* Shortly after Elam commenced his suit against McDorman, Carcorp also terminated his employment. *Id.* at ¶ 3. Elam then commenced suit against Carcorp, claiming he had been discharged in violation of public policy "that prevents an employer from terminating an employee for filing a lawsuit against their former employer." *Id.* at ¶ 5.

Elam, like White, relied on cases establishing the clear public policy preventing employers from discharging employees who consult attorneys. *Id.* at ¶¶ 13–16. The *Elam* court found those cases inapposite in light of *Taylor*'s clear distinction between employees who consult attorneys and those who file lawsuits. *Id.* at ¶ 16. As a result, the *Elam* court held that Elam had not demonstrated the existence of "a clear expression of legislative policy barring an employer from discharging an employee as a result of the employee's lawsuit against a third party." *Id.* at ¶ 24.

Following *Elam*, the Court finds that White has not sufficiently demonstrated that the public policy protecting an employee's right to consult counsel would extend to her discharge by PPI as a result of White's allegations against and settlement with Adena. Having failed to

sufficiently allege the clarity element, White's claim against PPI for wrongful discharge in violation of public policy must be dismissed.

**F.     Tortious interference with a business relationship (Counts 10–11)**

A claim for tortious interference with a contractual relationship requires proof of the following elements: (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 707 N.E.2d 853 (1999) (citing *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 650 N.E.2d 863 (1995), syllabus). The elements of a claim of tortious interference with a business relationship are nearly identical. "The main distinction between tortious interference with a contractual relationship and tortious interference with a business relationship is that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract." *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 942 (S.D. Ohio 2012).

Ohio law imposes the burden of proving the fourth element (interchangeably termed "lack of justification," "lack of privilege," or "improper interference") on the plaintiff. *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 742 (6th Cir. 1999) (citing *Kenty*, 72 Ohio St.d 415). When considering lack of justification, the Ohio Supreme Court has adopted Section 767 of the Restatement (Second) of Torts, which requires consideration of the following factors:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

*Id.* at 178–79. The first factor, the nature of the actor's conduct, is the chief factor in determining whether the conduct is improper. *Super Sulky*, 174 F.3d at 742.

White claims that Adena and Hageman tortiously interfered with White's business relationship with PPI and SOMC, and that SOMC, Fraulini, and Greene tortiously interfered with White's business relationship with PPI.

### 1.    Tortious interference by SOMC, Fraulini, and Greene

SOMC, Fraulini, and Greene first argue that they cannot be liable for tortious interference because they lacked knowledge that SOMC's refusal to have White work on its premises would entirely end the business relationship between White and PPI, as PPI could have assigned White work elsewhere.  The Court finds this argument unpersuasive.  Even if White's relationship with PPI had not been entirely severed, Ohio's formulation of the tort requires only "a breach *or* termination of the relationship."  *E.g.*, *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App. 3d 596, 2002-Ohio-3932, 774 N.E.2d 775 (3d Dist.), ¶ 23; *Geo-Pro Serv., Inc. v. Solar Testing Labs., Inc.*, 145 Ohio App. 3d 514, 525, 763 N.E.2d 664, 672 (10th Dist. 2001); *Chandler & Assoc., Inc. v. Am.'s Healthcare All., Inc.*, 125 Ohio App. 3d 572, 583, 709 N.E.2d 190, 197 (8th Dist. 1997) (emphasis added).  While SOMC may not have known that PPI's employment relationship with White was limited to onsite shifts at SOMC, SOMC would have known at the very least that its refusal to work with White would impair White's relationship with PPI so far as work on-site at SOMC was concerned.  This would be sufficient to cause a "breach" of White's business relationship with PPI.

The SOMC defendants' better argument is that SOMC's refusal to work with White was not improper.  As discussed above, White has not identified any statute or public policy that would prevent SOMC from refusing to work with White based on her lawsuit against a former employer.  And as White has not plausibly alleged that SOMC had knowledge that her claims against Adena were protected by Title VII, SOMC's actions were not unlawfully retaliatory.  The other considerations related to the nature of the actor's conduct outlined in the comments to Restatement

§ 767 (violence, misrepresentations, threat of litigation, economic pressure, and violation of business ethics or customs) have not been alleged by White. As a result, White has not alleged that the SOMC defendants' conduct lacked justification, and her claims for tortious interference against SOMC, Fraulini, and Greene must be dismissed.

### 2. Tortious interference by Adena and Hageman

#### a. Employment reference privilege

Adena and Hageman first argue that Hageman's and John Doe's statements to SOMC do not create liability for tortious interference because of Ohio's privilege for employment references. While Adena cites only cases speaking to a common law privilege, Ohio codified its employment reference privilege in 1997. Revised Code § 4113.71(B) provides:

> An employer who is requested by . . . a prospective employer of an employee to disclose to a prospective employer of that employee information pertaining to the job performance of that employee for the employer and who discloses the requested information to the prospective employer is not liable in damages in a civil action to that employee . . . for any harm sustained as a proximate result of making the disclosure or of any information disclosed, unless the plaintiff in a civil action establishes, either or both of the following:
>
> (1) By a preponderance of the evidence that the employer disclosed particular information with the knowledge that it was false, with the deliberate intent to mislead the prospective employer or another person, in bad faith, or with malicious purpose;
>
> (2) By a preponderance of the evidence that the disclosure of particular information by the employer constitutes an unlawful discriminatory practice described in section 4112.02, 4112.021, or 4112.022 of the Revised Code.

Adena argues that because its disclosure that White left on bad terms was not false, White cannot overcome the employment reference privilege. However, as White points out, falsity is but one method for overcoming the privilege. She can also prove that the disclosure was made in violation of § 4112.02(I), *i.e.*, that the disclosure was made in retaliation for her protected complaints of harassment and wrongful discharge. As discussed above, White has sufficiently

alleged that Adena and Hageman retaliated against her in violation of § 4112.02(I), and therefore the privilege will not bar her claim at the pleading stage.

### b.    Individual liability for Hageman

Hageman also argues that she cannot be individually liable for tortious interference, because her actions were taken in her capacity as Adena's employee and not solely for her own benefit.  It is true that Ohio law precludes individual liability when the individual is an employee of a party to the relationship at issue, unless the employee acted solely in his or her individual capacity and benefitted from the alleged interference.  *Miller v. Wikel Mfg. Co.,* 46 Ohio St.3d 76, 78–79, 545 N.E.2d 76 (1989); *Fitzgerald v. Roadway Express, Inc.*, 262 F. Supp. 2d 849, 860 (N.D. Ohio 2003).  This rule was created to prevent tortious interference claims in the absence of a third party who interferes with a contract or business relationship.  That is, if the individual is an employee of a party to the relationship, and acts within the scope of his or her employment, then the individual is merely an agent for one of the parties to the relationship.  Thus, in that situation, the individual is not a third party interfering with the business relationship, and the plaintiff simply hasn't established the elements of a tortious interference claim.  *Erebia v. Chrysler Plastic Prod. Corp.*, 891 F.2d 1212, 1216 (6th Cir. 1989).

But where the individual in question is not an employee of either party to the business relationship, this rule is not implicated.  In the case at bar, Hageman is an employee of Adena, but is alleged to have interfered with the business relationship between White and SOMC.  Hageman remains a third party to the relationship between White and SOMC and the rule of *Miller* does not apply.

Hageman cites *West v. Visteon Corp.*, 367 F. Supp. 2d 1160, 1164 (N.D. Ohio 2005) for the proposition that individuals cannot be liable for tortious interference when they act within the scope of their employment.  In *West*, the plaintiff alleged that both an individual employee of a

third-party corporation, and the third-party corporation itself, interfered with the plaintiff's relationship with her clients. The *West* court considered the plaintiff's argument that the "underlying logic" of *Miller* should not apply "when the relationship interfered with involves a plaintiff-third party and another third party rather than a plaintiff-third party and the agent's principal," but found the plaintiff had "offered no case law or reasonable explanation to support such a distinction." 367 F. Supp. 2d at 1164. Respectfully, this Court disagrees.

The "underlying logic" of *Miller* and similar cases is rooted in the necessity of a third party to the business relationship and does not otherwise speak to the employee/employer or agent/principal relationship. And Ohio courts hold that "[u]nless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment." *Whitt Sturtevant, LLP v. NC Plaza LLC*, 2015-Ohio-3976, 43 N.E.3d 19 (10th Dist.), ¶ 98 (quoting Restatement of Agency 3d, Torts, Section 7.01 (2006)). *See also Comer v. Risko*, 106 Ohio St. 3d 185, 2005-Ohio-4559, 189, 833 N.E.2d 712, ¶ 20 ("An agent who committed the tort is primarily liable for its actions, while the principal is merely secondarily liable."); *Stuart v. Nat'l Indem. Co.*, 7 Ohio App. 3d 63, 67, 454 N.E.2d 158, 163 (8th Dist. 1982) ("[B]oth the agent and the disclosed principal are liable for tortious misconduct by the agent within the scope of his employment.").

As a result, if an individual engages in conduct satisfying the elements of tortious interference, the individual cannot escape liability merely because she was acting within the scope of her employment. Because Hageman has not demonstrated that she should be exempt from these basic principles of tort law, White has sufficiently stated a claim for tortious interference against Hageman.

## IV. CONCLUSION

For the foregoing reasons, the Motions to Dismiss of SOMC, Fraulini, Greene, and PPI are

**GRANTED**. The Motion to Dismiss of Adena and Hageman is **GRANTED IN PART** and

**DENIED IN PART**. White's claims against Adena and Hageman for retaliation under Chapter

4112 and for tortious interference remain pending. All other claims are **DISMISSED**.

The Clerk shall remove Documents 28, 30, and 33 from the Court's pending motions list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**